**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| APRIL CARRERO-CHAVEZ,<br>    *Plaintiff*,<br><br>      v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>    *Defendant*. | No. 3:20-cv-01327 (VAB) |

**RULING AND ORDER ON MOTIONS REGARDING THE COMMISSIONER'S
DECISION**

April Carrero-Chavez ("Plaintiff") has filed this administrative appeal under 42 U.S.C. §
405(g) against Kilolo Kijakazi,[1] the Acting Commissioner of Social Security ("Defendant" or
"the Commissioner"), seeking to reverse the decision of the Social Security Administration
("SSA") denying her claim for Title II disability insurance benefits under the Social Security Act
between 2008 and 2013. Compl., ECF No. 1 (Aug. 21, 2020) ("Compl.").

Ms. Carrero-Chavez has moved for an order reversing the decision of the Commissioner,
or, in the alternative, an order remanding the case. *See* Mot. for Order Reversing the
Commissioner's Decision, ECF No. 28 (June 15, 2021) ("Mot. to Reverse").

On August 20, 2021, the Commissioner moved to affirm the decision. *See* Def. Mot. for
an Order Affirming the Decision of the Commissioner, ECF No. 30 (Aug. 20, 2021); Def.'s

---

[1] When a party in an official capacity resigns or otherwise ceases to hold office while the action is pending, the
officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend
the caption; the Court may also order such substitution at any time. Fed. R. Civ. P. 25(d); *see also Williams v.
Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018). The Clerk of
Court therefore will be ordered to change the defendant of the case from Andrew Saul to Kilolo Kijakazi. *See* Social
Security Administration, *Dr. Kilolo Kijakazi: Acting Commissioner,*
https://www.ssa.gov/agency/commissioner.html (last visited Mar. 18, 2022).

Mem. in Supp. of Mot. for an Order Affirming the Commissioner's Decision, ECF No. 30-1 (Aug. 20, 2021) ("Mot. to Affirm").

For the following reasons, Ms. Carrero-Chavez's motion is **DENIED**.

The Commissioner's motion is **GRANTED** and, accordingly, the decision of the Commissioner is **AFFIRMED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations[2]

Born in 1963, Ms. Carrero-Chavez had reached the age of fifty-five (55) at the time of the alleged onset of her disability. *See* Transcript of Administrative Proceedings at 259, ECF No. 24 ("Tr.") (Appl. Summ. for Disability Insurance Benefits at 1 (Dec. 4, 2018)). Ms. Carrero-Chavez completed high school and a post-secondary certificate program. *Id*. at 39 (Soc. Sec. Hr'g Tr. at 4 (May 21, 2020) ("SSA Tr.")).

Before the alleged onset of disability, Ms. Carrero-Chavez worked as an airline reservation agent for approximately three years and later as a caregiver at mental health care facilities for approximately three years. *Id.* at 328 (Work History Report at 1 (Dec. 26, 2018)); *id*. at 117–18 (Disability Determination Explanation—Recons. at 6–7 (Sept. 12, 2019)). Besides an approximately one-month period of part-time employment as a cashier in 2018, Ms. Carrero-

---

[2] As explained below, the parties did not confer to file a Stipulation of Facts as required by the Court's supplemental scheduling order in this case. *See* Suppl. Scheduling Order at 2, ECF. No. 25 (Feb. 10, 2021) ("To expedite the court's consideration of these motions, counsel for the parties must confer to prepare a Stipulation of Facts based on the administrative record." (emphasis omitted)). Instead, the Commissioner filed her own statement of facts in support of her motion to affirm the decision of the Commissioner, as attempts to contact Ms. Carrero-Chavez's counsel to prepare a joint statement of facts were unsuccessful. Statement of Facts at 1, ECF No. 30-2 (Aug. 20, 2021) ("Gov't SOMF"). The Plaintiff, in a reply to the Commissioner's brief, filed her own statement of facts. *See* Reply, ECF No. 36 (Dec. 29, 2021) ("Reply"). Thus, the Court's fact section here consists of facts upon which the parties appear to agree, based on both parties' filings and the record, except where judicial notice is taken. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Chavez has not been employed since 2009. *Id*. at 328 (Work History Report at 1 (Dec. 26, 2018)).

The Administrative Law Judge ("ALJ") found Ms. Carrero-Chavez to have the following medically determinable impairment through the date last insured, which is June 30, 2013: "lumbar degenerative disc disease." *Id*. at 22 (Soc. Sec. Admin. Decision at 4 (June 12, 2020)). The ALJ also found that Ms. Carrero-Chavez did not have a severe impairment or combination of impairments through the date last insured. *Id*.

### 1. Medical History

In May and August 2001, Ms. Carrero-Chavez received lumbar spine imaging exams in response to lower back pain. *Id*. at 442–43 (Rockville General Hospital Medical Records (May 1, 2001); Rockville General Hospital Medical Records (Aug. 30, 2001)). Both exams showed "unremarkable" findings and did not indicate a cause for Ms. Carrero-Chavez's symptoms. *Id*.

On March 22, 2002, a pelvic ultrasound revealed a "single moderately large fundal fibroid" on Ms. Carrero-Chavez's uterus that had grown in size since a previous exam in August 2000. *Id*. at 444–45 (Rockville General Hospital Medical Records (Mar. 22, 2002)). Ms. Carrero-Chavez reported that these fibroids contributed to her back pain. *Id*. at 452 (Letter from April Carrero-Chavez (Sept. 16, 2019)).

On February 12, 2003, Ms. Carrero-Chavez underwent another x-ray exam for back pain. *Id*. at 440 (Rockville General Hospital Medical Records (Feb. 12, 2003)). That exam again showed "unremarkable" findings and did not identify a cause for Ms. Carrero-Chavez's back pain. *Id*.

Ms. Carrero-Chavez reported undergoing a hysterectomy in 2004 to remove the uterine fibroids identified in the 2002 ultrasound. *Id*. at 452 (Letter from April Carrero-Chavez (Sept. 16,

2019)); *id.* at 812 (Letter from April Carrero-Chavez to Judge Ryan Alger (May 21, 2020)); *id.* at 821 (CDC Grant (May 1, 2014)).[3]

On September 11, 2014, Ms. Carrero-Chavez underwent a lumbar spine x-ray due to lower back pain. The examination found a "slight anterolisthesis" and "[f]acet arthrosis," but "[n]o appreciable abnormal mobility" and "[n]o acute compression fracture." *Id.* at 408 (Rockville General Hospital Medical Records (Sept. 11, 2014); *id.* at 449 (Rockville General Hospital Medical Imaging Report (Sept. 11, 2014)).

Notes from the examination by Dr. Kenneth R. Alleyne indicated that Ms. Carrero-Chavez reported "persistent pain in the lumbosacral spine with occasional radiation on the right lower extremity," and that the pain was particularly severe when she was lying supine. *Id.* at 403 (Progress Notes, Kenneth R. Alleyne, M.D. (Sept. 11, 2014)). Dr. Alleyne's notes indicated that the x-rays had shown "mild degenerative disc disease in the lower lumbar region" and "[n]o other significant findings." *Id.* Further, Dr. Alleyne's notes found "normal" levels of strength and "[g]ood range of motion in both upper extremities." *Id.* The notes also mentioned that Ms. Carrero-Chavez had been taking Aleve to help with her lower back pain. *Id.*

On September 24, 2014, Ms. Carrero-Chavez saw a physical therapist for a spine evaluation, based on a referral from Dr. Alleyne. *See id.* at 413–16 (ECHN Rehabilitation Services Spine Evaluation (Sept. 24, 2014)). The exam noted that Ms. Carrero-Chavez had a slow gait. *Id.* at 413. The exam notes also indicated that Ms. Carrero-Chavez needed assistance

---

[3] The record does not include any contemporaneous medical records confirming Ms. Carrero-Chavez's 2004 hysterectomy. Ms. Carrero-Chavez claimed that the hospital where this procedure occurred destroyed the records after 10 years, under their policy, and as a result no records are available. *See* Tr. at 452 (Letter from April Carrero-Chavez (Sept. 16, 2019)). Because the Commissioner's statement of facts does not contest that Ms. Carrero-Chavez reported having a hysterectomy in 2004, this fact is included. *See* Gov't SOMF at 2 ¶ 3.

getting in and out of bed and that she could not sit for two hours without difficulty. *Id*. at 415. Ms. Carrero-Chavez was put on a treatment plan of aquatics and therapeutic exercise. *Id*. at 416.

On October 29, 2014, a progress report from a physical therapist visit indicated that Ms. Carrero-Chavez had not yet met any of the original goals for her therapeutic treatment and said she would benefit from continued "formal therapy." *Id*. at 417 (ECHN Rehabilitation Services Progress Report (Oct. 29, 2014)).

On November 13, 2014, Ms. Carrero-Chavez saw Dr. Alleyne again and reported increasing lumbar spine pain. *Id*. at 405 (Progress Notes, Kenneth R. Alleyne, M.D. (Nov. 13, 2014)). Dr. Alleyne again found low back pain with mild lumbar degenerative disease. *Id.* Dr. Alleyne ordered magnetic resonance imaging ("MRI") for further assessment. *Id.* The notes indicated that Ms. Carrero-Chavez used Aleve, Mobic, a Lidoderm patch, a Medrol Dosepak, and physical therapy to treat her back pain. *Id.*; Gov't SOMF at 2 ¶ 6.

On November 17, 2014, Ms. Carrero-Chavez received a lumbar spine MRI. Tr. at 410 (Rockville General Hospital, MRI Report (Nov. 17, 2014)). The MRI showed a concentric disk bulge at L4-L5, with mild stenosis, minimal lateral disk bulging at L3-L4 and L2-L3 without significant stenosis, and a smaller right lateral disk bulge at L1-L2 without stenosis. *Id.*

On November 20, 2014, Ms. Carrero-Chavez visited Dr. Alleyne to discuss the results of her MRI. *Id*. At 406 (Progress Notes, Kenneth R. Alleyne, M.D. (Nov. 20, 2014)). Dr. Alleyne prescribed a Medrol Dosepak tablet and referred Ms. Carrero-Chavez for a consultation for regional pain management. *Id*.

On December 18, 2014, Ms. Carrero-Chavez received joint injections for pain treatment. *Id*. at 446–48 (Rockville General Hospital, Procedure Report, Dr. Johar Sandeep (Dec. 18,

2014)). Ms. Carrero-Chavez reported that these injections improved her back pain. *Id*. at 447–48; Gov't SOMF at 2 ¶ 8.

On November 30, 2016, Andrew Gregory, a nurse practitioner, wrote in a letter that Ms. Carrero-Chavez was under his care for "an acute exacerbation of chronic lower back pain" that caused her to be "unable to sit for any length of time." Tr. at 439 (Letter from Andrew Gregory, NP-C, Connecticut Back Center (Nov. 30, 2016)). Mr. Gregory recommended that Ms. Carrero-Chavez refrain from jury duty that week. *Id*.

On December 9, 2016, Ms. Carrero-Chavez received lumbar spine imaging that showed "no acute fracture or dislocation" and mild hypertrophic degenerative changes at the margins of lumbar vertebrae. *Id*. at 748 (Rockville General Hospital, Medical Imaging Report (Dec. 9, 2016)).

In October 2017, Ms. Carrero-Chavez received an epidural steroid injection at the L3-L4 interspace. *Id*. at 450 (Rockville General Hospital, Consultation, Dr. Kwok Chan (Oct. 19, 2017)); *id*. at 747 (Interventional Pain Specialists, Progress Note, Craig Foster, M.D. (Dec. 22, 2017)). Ms. Carrero-Chavez reported that this injection helped to improve her lower back pain and leg symptoms. *Id*.

On December 22, 2017, Ms. Carrero-Chavez saw Dr. Craig Foster and reported a recurrence of back discomfort. *Id*. at 747 (Interventional Pain Specialists, Progress Note, Craig Foster, M.D. (Dec. 22, 2017)). Dr. Foster prescribed another epidural steroid injection at L3-4 to further reduce or eliminate her symptoms. *Id*.

On April 6, 2018, Ms. Carrero-Chavez returned to Dr. Foster reporting increasing back pain. *Id*. at 746 (Interventional Pain Specialists, Progress Note, Craig Foster, M.D. (Apr. 6, 2018)). Ms. Carrero-Chavez requested another epidural steroid injection. *Id*. Dr. Foster again

6

prescribed an epidural steroid injection at L3-4, to be scheduled at Ms. Carrero-Chavez's convenience. *Id*.

In August and September 2018, Ms. Carrero-Chavez sought treatment for severe pain in her right knee. *Id*. at 581–83 (Sports Medicine & Orthopedic Surgery, P.C., Medical Records (Aug. 9, 2018)); *id*. at 579–80 (Sports Medicine & Orthopedic Surgery, P.C., Medical Records (Aug. 16, 2018)); *id*. at 578 (Sports Medicine & Orthopedic Surgery, P.C., Medical Records (Aug. 27, 2018)); *id*. at 576–77 (Sports Medicine & Orthopedic Surgery, P.C., Medical Records (Sept. 12, 2018)); *id*. at 575 (Sports Medicine & Orthopedic Surgery, P.C., Medical Records (Sept. 21, 2018)). Ms. Carrero-Chavez reported that this knee pain had caused "very severe" functional impairment and left her unable to carry out any daily activities or sleep regularly. *Id*. at 581 (Sports Medicine & Orthopedic Surgery, P.C., Medical Records (Aug. 9, 2018)).

On October 4, 2018, Ms. Carrero-Chavez underwent surgery on her right knee to alleviate ongoing mechanical anteromedial knee pain. *Id*. at 573–74 (Glastonbury Surgery Center, Operative Report (Oct. 4, 2018)); *id*. at 575 (Sports Medicine and Orthopedic Surgery, P.C., Medical Records (Sept. 21, 2018)).

In a medical source statement completed on December 3, 2018, Wendy Sperry, an Advanced Practice Registered Nurse ("APRN"), indicated that Ms. Carrero-Chavez could never sit, stand, walk, lift and carry any amount of weight, perform postural activities, or be around unprotected heights or moving machinery. *Id*. at 503–04 (Impairment Questionnaire at 4–5 (Dec. 3, 2018)). Ms. Sperry wrote that Ms. Carrero-Chavez required a cane to stand and walk and had significant limitations with reaching, grasping, handling, or fingering objects. *Id*. at 503. Ms. Sperry further opined that Ms. Carrero-Chavez's symptoms would be so severe that they would interfere with the attention and concentration needed to perform even simple work tasks for at

least 21-25% of a typical workday. *Id*. at 504. Ms. Sperry indicated on the form that Ms. Carrero-Chavez was unable to work for 2 months or more, but for less than 6 months, although she also wrote in the margin next to that question that her response was either "less than 2 months" or "2 months or possibly 72 months, but less than 6 months." *Id*. at 501.

On April 12, 2019, Ms. Carrero-Chavez told Dr. Foster that her back pain had been under control for almost 12 months since her April 2018 epidural steroid injection. *Id*. at 726 (Interventional Pain Specialists, Progress Note (Apr. 12, 2019)). She reported experiencing a resurgence of lower back pain, however, after a motor-vehicle accident in which she was involved "approximately 3-4 weeks" prior to that April 2019 visit. *Id*.

On May 30, 2019, Ms. Carrero-Chavez visited Dr. Vipul Dua and complained of increasing right knee pain since her 2018 surgery. *Id*. at 802 (Vipul Dua, M.D., Medical Records (May 30, 2019)). Dr. Dua discussed with Ms. Carrero-Chavez that a total knee arthroplasty would be necessary to relieve her symptoms, and Ms. Carrero-Chavez decided to proceed with the surgery. *Id*. Ms. Carrero-Chavez underwent the right total knee arthroplasty surgery on July 16, 2019. *Id*. at 799–800 (Manchester Memorial Hospital, Report of Operation (July 16, 2019)).

On February 27, 2020, Ms. Carrero-Chavez reported to Dr. Danielle Butto, a podiatrist, that she had been experiencing foot pain after her knee surgery. *Id*. at 807–11 (Trinity Health of New England, Progress Notes (Feb. 27, 2020)). Dr. Butto prescribed topical pain treatment and noted that Ms. Carrero-Chavez was already on oral anti-inflammatory medication. *Id*. at 810.

At her administrative hearing on May 21, 2020, Ms. Carrero-Chavez reported that she had recently been diagnosed with bursitis in her hips. *Id*. at 40–42 (SSA Tr. at 8–10). Ms. Carrero-Chavez also stated that she had recently undergone another injection for her back pain. *Id*. at 40 (SSA Tr. at 8).

### 2. Disability Applications

Ms. Carrero-Chavez filed a Title II application for a period of disability and disability insurance benefits on November 26, 2018, alleging disability beginning January 1, 2008. *Id*. at 19 (Soc. Sec. Admin. Decision at 1 (June 12, 2020)).

On the same day, Ms. Carrero-Chavez also filed an application for supplemental security income ("SSI"). *Id*. at 97 (Initial Disability Determination, Title XVI (May 8, 2019)).

On May 8, 2019, Ms. Carrero-Chavez's applications were denied. *Id*. at 19 (Soc. Sec. Admin. Decision at 1 (June 12, 2020)); *Id*. at 73–80 (Initial Disability Determination Explanation at 66–97 (May 8, 2019)).

On June 24, 2019, Ms. Carrero-Chavez requested reconsideration of the determination. *Id*. at 137–38 (Request for Recons. (June 24, 2019)).

On September 12, 2019, the SSA reaffirmed the denial of Ms. Carrero-Chavez's disability insurance benefits application. *Id*. at 19 (Soc. Sec. Admin. Decision at 1 (June 12, 2020)); *Id*. at 123–24 (Disability Determination Explanation – Recons. at 12– 13 (Sept. 12, 2019)). Upon reconsideration, however, the SSA determined that Ms. Carrero-Chavez met the requirements for SSI benefits as of her November 26, 2018 application date. *Id*. at 98–111 (Recons. Disability Determination (Sept. 12, 2019)); *Id*. at 126 (Recons. Disability Determination, Title XVI (Sept. 12, 2019)).

On September 27, 2019, Ms. Carrero-Chavez completed a request for a hearing. *Id*. at 144–146 (Request for Hearing by Administrative Law Judge (Sept. 27, 2019)).

The initial hearing was held on May 21, 2020. *Id*. at 19 (Soc. Sec. Admin. Decision at 1). Ms. Carrero-Chavez testified about her knee pain, back pain, bursitis in her hips, and her

hysterectomy. *Id*. at 40–42 (SSA Tr. at 8–10). Ms. Carrero-Chavez was not represented by an attorney at the hearing. *Id*. at 36–38.

On June 12, 2020, ALJ Ryan A. Alger issued a decision denying Ms. Carrero-Chavez's application for benefits. *Id*. at 19–26 (Soc. Sec. Admin. Decision (June 12, 2020)). Ms. Carrero-Chavez filed a written request with the Appeals Council for review of the ALJ's decision. *Id*. at 9–10 (Letter from SSA to April Carrero-Chavez (July 7, 2020)).

On August 25, 2020, the Appeals Council denied the request for review and affirmed the ALJ's decision. *Id*. at 1–4 (Notice of Appeals Council Action (Aug. 25, 2020)).

### 3. ALJ Decision

On June 9, 2020, ALJ Alger issued his decision denying Ms. Carrero-Chavez disability insurance benefits. *Id*. at 19–26 (Soc. Sec. Admin. Decision (June 12, 2020)).

At Step One of the sequential evaluation, the ALJ found that Ms. Carrero-Chavez had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2008, through her date last insured of June 30, 2013. *Id*. at 21 (Soc. Sec. Admin. Decision at 3 (June 12, 2020)). At Step Two, the ALJ found that Ms. Carrero-Chavez had one medically determinable impairment, lumbar degenerative disc disease. *Id*. at 22. The ALJ then concluded that Ms. Carrero-Chavez's impairment did not significantly limit her ability to perform basic work activities for 12 consecutive months before the date last insured. *Id*. The ALJ therefore concluded that Ms. Carrero-Chavez was not under a disability, as defined by the Social Security Act, at any time from the alleged onset date to the date last insured. *Id*. at 26.

### B. Procedural History

On September 8, 2020, Ms. Carrero-Chavez filed this appeal. *See* Compl.

On October 27, 2020, Ms. Carrero-Chavez filed a motion to appoint counsel. *See* Mot. to Appoint Counsel, ECF No. 16 (Oct. 27, 2020). This motion was denied. *See* Order, ECF No. 20 (Nov. 20, 2020).

On October 28, 2020, the Commissioner filed a motion to stay the proceedings until January 8, 2021, which the Court granted. *See* Mot. to Stay, ECF No. 17 (Oct. 28, 2020); Order, ECF No. 18 (Nov. 19, 2020).

On December 10, 2020, Attorney Maurice Maitland filed an appearance on behalf of April Carrero-Chavez. *See* Notice of Appearance, ECF No. 21 (Dec. 10, 2020).

On January 5, 2021, the Court granted an additional motion to stay until March 9, 2021. *See* Order, ECF No. 23 (Jan. 5, 2021).

On February 10, 2021, the Court entered a Supplemental Scheduling Order requiring "counsel for the parties [to] confer to prepare a Stipulation of Facts based on the administrative record . . . on or before April 10, 2021." Suppl. Scheduling Order, ECF. No. 25 (Feb. 10, 2021) (emphasis omitted).

On June 15, 2021, Ms. Carrero-Chavez moved to reverse the decision of the Commissioner. *See* Mot. to Reverse.

On August 20, 2021, the Commissioner moved to affirm the decision. *See* Mot. to Affirm. On that date, the Commissioner also filed a statement of facts, which stated that the agency had attempted to contact Ms. Carrero-Chavez's counsel to prepare a joint statement of facts, but such attempts were unsuccessful. Gov't SOMF at 1. The Commissioner therefore filed her own statement of facts in support of the motion to affirm. *Id*.

On December 29, 2021, following an extension of time, Ms. Carrero-Chavez filed a reply in further support of her motion to reverse or remand, including a statement of facts. *See* Reply, ECF No. 36 (Dec. 29, 2021).

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see also Moreau v. Berryhill*, No. 17-CV-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) ("[T]he court may only set aside the ALJ's determination as to social security disability if the decision 'is based upon legal error or is not supported by substantial evidence.'" (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998))).

"Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moran*, 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) ("Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448 (citing *Dickson v. Zurko*, 527 U.S. 150, 153 (1999)).

## III.    DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled under the Social Security Act, an ALJ must perform a five-step evaluation. As the agency explains:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . ;
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . . ;
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled . . . ;
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . ;
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . .

20 C.F.R. § 404.1520(a)(4).

Ms. Carrero-Chavez argues that the ALJ's finding that she did not have a severe, medically determinable impairment at Step Two, before the date last insured, is not supported by substantial evidence. Mot. to Reverse at 2. In addition, as part of her filings with this Court, Ms.

Carrero-Chavez argues for remand based on new, material evidence submitted with the appeal. *Id*. at 1–3.

The Court will address each of these arguments below.

### A.  The Date Last Insured

"To be eligible for disability benefits under Title II of the Act, a claimant must have been insured within the meaning of 42 U.S.C. § 423(c) at the onset date of his or her disability . . . ." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Once a person gains fully insured status, as defined in 42 U.S.C. § 414, a person is "insured for disability insurance benefits in any month if . . . [s]he had not less than 20 quarters of coverage during the 40–quarter period which ends with the quarter in which such month occurred[.]" 42 U.S.C. § 423(c)(1); *accord Collier v. Barnhart*, 473 F.3d 444, 447 (2d Cir. 2007).

The ALJ's conclusion that "[t]he claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2013" is supported by substantial evidence. Tr. at 20 (Soc. Sec. Admin. Decision at 2 (June 12, 2020)). Ms. Carrero-Chavez reported that she worked between April 2005 and June 2009 as a caregiver. *Id*. She did not report any other employment to date except, between May and June of 2018, as a cashier at Bed Bath & Beyond. *Id*. Ms. Carrero-Chavez could not perform the duties of her job in that position. *Id*.

The administrative record in this case contains a Certified Earnings Record, an online report that includes the SSA's calculations of the date last insured ("DLI"), which indicates that Ms. Carrero-Chavez consistently worked and earned qualifying coverage each quarter through 2007.[4] *See* Tr. at 279–80. The earnings record then reflects only two (2) quarters of coverage for

---

[4] "The date last insured ('DLI') is a technical term used by the Commissioner to mark the last day on which a claimant is eligible for disability insurance benefits and is calculated using the claimant's recent work history—

the subsequent twenty-one (21) quarters, from the first quarter of 2008 to the first quarter of

2013. *Id*. at 279–80. Thus, after the quarter ending June 30, 2013, Ms. Carrero-Chavez no longer

met the 20/40 test. *Id*. The SSA also confirmed the last insured date of June 30, 2013, as noted

throughout the record. *See id*. at 279 (Certified Earnings Records at 1); *id*. at 307 (Disability

Report—Field Office at 1); *see also id*. at 174, 191 (Hearing Notice at 4, 18 (Feb. 20, 2020)); *id*.

at 202 (Hearing Notice at 4 (Apr. 10, 2020)).

The Court therefore finds that the date last insured determined by the ALJ is supported by

substantial evidence.

### B.  The Determination of a Disability Before June 30, 2013

Ms. Carrero-Chavez is not entitled to benefits unless she became disabled before

her last date insured. *See Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (a claimant "cannot

obtain disability insurance benefits unless he is eligible for a 'period of disability'" and "he

cannot be entitled to a 'period of disability' unless his back problem rendered him disabled

beginning no later than [his date last insured]"). The ALJ found that, although Ms. Carrero-

Chavez suffers from a medically determinable impairment, lumbar degenerative disc disease, she

did not suffer from "severe" impairment significantly limiting her ability to perform basic work-

related activities for 12 consecutive months before the date last insured of June 30, 2013, as

relevant to her disability insurance benefits claim. Tr. at 22 (Soc. Sec. Admin. Decision at 4

(June 12, 2020)). The ALJ's conclusion is supported by substantial evidence.

Before June 30, 2013, the record reveals very few reports of Ms. Carrero-Chavez's

symptoms, other than Ms. Carrero-Chavez's letters stating that a fibroid located on her uterus,

---

broadly speaking, taxes paid into the Social Security system accrue as 'work credits' that provide quarters of insurance coverage under the program." *Elizabeth A. o/b/o A.C.P., III  v. Saul*, No. 20-CV-128-A (RJA), 2021 WL 2431002, at *2 n.5 (W.D.N.Y. June 15, 2021) (quoting *Kathy R. v. Comm'r of Soc. Sec.*, No. 6:19-CV-385 (DNH), 2020 WL 1862967 (N.D.N.Y. Apr. 14, 2020)).

for which she received a hysterectomy in 2004, contributed to her back pain. *Id*. at 812–22

(Hospital Records, dated 05/01/2001 to 04/12/2012). Although she received lumbar spine and

dorcal spine imaging exams in response to lower back pain in May and August of 2001, as well

as x-rays in February of 2003, all imaging showed "unremarkable" findings and did not indicate

a cause for Ms. Carrero-Chavez's symptoms. *Id*. at 442–43 (Rockville General Hospital Medical

Records (May 1, 2001); Rockville General Hospital Medical Records (Aug. 30, 2001)); *id*. at

440 (Rockville General Hospital Medical Records (Feb. 12, 2003)). No further evidence of lower

back pain appears in the record until September 11, 2014.[5] *See id*. at 408 (Rockville General

Hospital Medical Records (Sept. 11, 2014)); *id.* at 449 (Rockville General Hospital Medical

Imaging Report (Sept. 11, 2014)).

The Court thus agrees that no medical records support her diagnosis from the alleged

onset date through the date last insured.

The ALJ also appropriately considered Ms. Carrero-Chavez's reported symptoms in light

of this available medical information (or lack thereof), as well as medical opinions and prior

administrative findings. *Id*. at 21–26 (Soc. Sec. Admin. Decision at 3–8 (June 12, 2020)); *see

also* 20 C.F.R. § 404.1529 (objective evidence is properly considered alongside a claimant's

subjective experience of pain). The evidence presented in the administrative hearing provided

information primarily about Ms. Carrero-Chavez's current condition. *See supra* § I.A (factual

background). "But when a claimant does not show that a currently existing condition rendered

her disabled prior to her date last insured, benefits must be denied." *Mauro v. Berryhill*, 270 F.

Supp. 3d 754, 762 (S.D.N.Y. 2017) (collecting cases), *aff'd*, 746 F. App'x 83 (2d Cir. 2019)

---

[5] The same information is lacking in the record in relation to Ms. Carrero-Chavez's alleged knee and hip pain; accordingly, the Court also finds that the ALJ's conclusion that no medical evidence appears in the record to support Ms. Carrero-Chavez's report of knee and hip pain before 2018 is supported by substantial evidence. *See* Tr. 23–24, 40–31.

(summary order); *see also, e.g.*, *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 302 (S.D.N.Y. 2014) (denying benefits where "at best the evidence show[ed] that [plaintiff] experienced progressively worsening symptoms that eventually became disabling" after his date last insured).

Further, the ALJ appropriately rejected any retrospective diagnosis that may be inferred from evidence in the medical record after the date last insured, where there is no retrospective diagnosis from a treating physician or medical records to support such an opinion.[6] *See Swainbank v. Astrue*, No. 1:06-CV-248 (JGM), 2008 WL 731302, at *2 (D. Vt. Mar. 18, 2008) (affirming decision of the Commissioner where petitioner failed to provide evidence of "any impairment during the relevant period and no retrospective opinion from a current treating source relating to the impairment during the time she was insured"), *aff'd*, 356 F. App'x 545 (2d Cir. 2009); *see also Kavanaugh v. Saul*, No. 3:18-CV-01521 (MPS), 2020 WL 1181436, at *3 (D. Conn. Mar. 12, 2020) (approving an ALJ "according little weight to a treating physician's retrospective diagnosis where the doctor did not treat the claimant during the relevant period and where 'record medical evidence contradicted or failed to support [the doctor's] retrospective opinions'" (quoting *Reynolds v. Colvin*, 570 F. App'x 45, 48 (2d Cir. 2014) (summary order)).

Accordingly, the ALJ's finding that Ms. Carrero-Chavez was not disabled at Step Two of the sequential evaluation process is supported by substantial evidence. *See Flanigan*, 21 F. Supp. 3d at 303 (affirming decision of the Commissioner where ALJ's decision was supported "by substantial evidence (or rather the absence of medical evidence during the period in issue [predating the date last insured])"); *Swainbank*, 2008 WL 731302, at *1–*3 (affirming decision

---

[6] The imaging in 2014 revealing mild degenerative changes in the spine, which was described by the ALJ as having the potential to signal that mild degenerative changes began before 2014, *see* Tr. at 24, provides no such actual information or corroborating medical evidence, *see Clark v. Saul*, 444 F. Supp. 3d 607, 621 (S.D.N.Y. 2020) ("[F]or [records post-dating the DLI] to provide substantial evidence of a disability during the relevant time period, the records must actually shed light on [the plaintiff's] condition during that period.")

of the Commissioner where "the first time that a medical test demonstrated a severe sleeping impairment" was years after the date last insured, even where the claimant corroborated sleep problem prior to that test).

As part of her filings with this Court, Ms. Carrero-Chavez also has submitted letters that were not included in the original administrative proceedings, including: (1) a letter from Walgreens dated February 26, 2021; (2) an affidavit of support from April Carrero-Chavez; (3) an affidavit of support from Malika Washington; (4) an affidavit of support from Eduardo Chavez; (4) an affidavit of support from Icelena Daye; (5) a report from Manchester Orthopedic Surgery and Sports Medicine, PC dated September 17, 2001; (6) a report by Dr. Shifferdecker dated September 7, 2001; (7) a letter by Dr. Michael P. Bey, Prohealth Physician, PC, dated February 7, 2002; and (8) a report from Evergreen Imaging dated November 17, 2014. *See* Mot. to Reverse at 1.

The Court "may remand a case for consideration of such evidence 'only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Mauro*, 270 F. Supp. 3d at 762–63 (quoting 42 U.S.C. § 405(g)). "'Material' means 'both relevant to the claimant's condition during the time period for which benefits were denied and probative.'" *Id*. (quoting *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (citation omitted)). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*. (internal citation omitted).

The affidavits and letters from April Carrero-Chavez, as well as her friends and family members, merely confirm Ms. Carrero-Chavez's testimony at trial regarding her chronic back

pain, without providing any medical evidence from the relevant period. Mot. to Reverse at 19, 25, 29, 33. Other miscellaneous records provided also fail to elicit new medical information, including the report from Evergreen Imaging on November 17, 2014 and the letter from Walgreens dated February 26, 2001. *Id*. at 14, 50.

The additional reports from healthcare providers, while corroborating Ms. Carrero-Chavez's pain, similarly fail to provide new medical information that would have influenced the Commissioner's decision. The first report provided from Manchester Orthopedic Surgery and Sports Medicine, PC dated September 17, 2001 corroborates Ms. Carrero-Chavez's "chronic lower back pain since August of 2000" but provides no related test results or diagnosis. *Id*. at 37. The second report by Dr. Shifferdecker, dated September 7, 2001, confirms that an x-ray on August 30, 2001 of the spine was "negative." *Id*. at 41. Although Ms. Carrero-Chavez asked Dr. Shifferdecker for a cat scan or MRI, there is no evidence that this test actually was ordered, or results from such a test. *Id*.

The third report by Michael P. Bey, M.D., of Prohealth Physicians, PC, also confirms that x-rays of the spine were "negative," despite reports of back pain. *Id*. at 45. This report does confirm, for the first time, a diagnosis of chondromalacia patella, as relevant to Ms. Carrero-Chavez's reported knee pain. *Id*. This diagnosis, however, is not material where no evidence apart from Ms. Carrero-Chavez's testimony shows that, between 2008 and 2013, Ms. Carrero-Chavez was unable to work due to knee pain. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (stating that "mere diagnosis . . . without a finding as to the severity of symptoms and limitations [did] not mandate a finding of disability" (internal citation omitted)); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (a claimant's subjective complaints are examined "in light of the other evidence in the record" to determine whether they rise to the level of disability

(internal citation omitted)); *see also, e.g.*, *Mauro*, 270 F. Supp. 3d at 763 (finding that, in reviewing the administrative record, "the ALJ correctly focused not on the question of whether cancer was present but rather on whether there was medical evidence [the claimant] was unable to work prior to [the date last insured], due to her medical condition").

As a result, the supplemental reports from healthcare providers are insufficient to establish disability, where they do not provide corroborating medical tests or otherwise show that Ms. Carrero-Chavez's impairment would affect her ability to work. *See Behling v. Comm'r of Social Sec.*, 369 F. App'x 292, 294 (2d Cir. 2010) (summary order) ("While it is true that 'subjective evidence of pain or disability testified to by the claimant' is relevant in evaluating a claim for disability insurance," a claimant's "subjective complaints alone are not a basis for an award of disability insurance benefits in the absence of corroborating objective medical evidence." (internal citations omitted)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("Subjective complaints of pain [are] insufficient to establish disability" where "unsupported by objective medical evidence . . . .").

In sum, there is no "reasonable possibility that the new evidence would have influenced" the ALJ's decision that Ms. Carrero-Chavez was not disabled before June 30, 2013. *See Lisa*, 940 F.2d at 43. Further, the ALJ's analysis as to Step Two in the administrative proceedings was supported by substantial evidence. The Court, as a result, does not consider Ms. Carrero-Chavez's arguments as relevant to later stages of the proceedings. *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

Accordingly, the motion to reverse or remand will be denied, and the motion to affirm will be granted.

**IV.    CONCLUSION**

For the foregoing reasons, Ms. Carrero-Chavez's motion is **DENIED**.

The Commissioner's motion is **GRANTED** and, accordingly, the decision of the

Commissioner is **AFFIRMED**.

The Clerk of Court respectfully is directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, 18th day of March, 2022.

     /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge